## UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| WHEATLAND TUBE, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> *and* <br><br> HYUNDAI STEEL, <br><br> SEAH STEEL CORPORATION, <br><br> NEXTEEL CO., LTD., *and* <br><br> HUSTEEL CO., LTD., <br><br> *Defendant-Intervenors* | **Court No. 22-00160** |

## PLAINTIFF WHEATLAND TUBE'S MOTION FOR JUDGEMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff Wheatland Tube ("Wheatland" or "Plaintiff") hereby moves for judgment on the agency record with regard to the Department of Commerce's ("Commerce's") final determination in the 2019-2020 administrative review of the antidumping order on circular welded non-alloy steel pipe from the Republic of Korea, *Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 26,343 (Dep't Commerce May 4, 2022).

Plaintiff maintains that certain aspects of Commerce's final determination were not supported by substantial evidence, were arbitrary and capricious, and were otherwise not in

accordance with the law. The reasons for Plaintiff's views and points and arguments in support

are detailed in the attached memorandum. Plaintiff respectfully asks this Court to remand the

matter to Commerce for a redetermination on these issues.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland
Tube*

Dated: October 5, 2022

### UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| WHEATLAND TUBE, | |
| *Plaintiff,* | |
| v. | |
| UNITED STATES, | **Court No. 22-00160** |
| *Defendant,* | |
| *and* | |
| HYUNDAI STEEL, | |
| SEAH STEEL CORPORATION, | |
| NEXTEEL CO., LTD., *and* | |
| HUSTEEL CO., LTD.,| |
| *Defendant-Intervenors* | |

### PLAINTIFF WHEATLAND TUBE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR JUDGEMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2

Roger B. Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland Tube*

Dated: October 5, 2022

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

RULE 56.2 STATEMENT ......................................................................................................... 1

STATEMENT OF THE FACTS ................................................................................................ 2

SUMMARY OF THE ARGUMENT ......................................................................................... 5

STANDARD OF REVIEW ........................................................................................................ 6

ARGUMENT ............................................................................................................................. 7

    I.     Commerce's Decision to Grant Respondents CEP Offsets in this Review was
           Unsupported by Substantial Evidence and Was Arbitrary and Capricious ....................... 7

       A.   As established by statute, regulation, Court decisions, and agency practice, a
            CEP offset is not automatic, an effect on prices must be demonstrated, and the
            burden is on the respondent to provide sufficient supporting information and
            analysis from the outset................................................................................................ 7

       B.   Commerce explicitly recognized that respondents failed to meet that burden in
            this review, and Commerce's decision to grant them offsets anyway was
            therefore arbitrary and capricious as well as contrary to the statute.............................. 13

CONCLUSION AND RELIEF SOUGHT ................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 616 F. Supp. 2d 1354 (Ct. Int'l Trade 2009) ................................................................................................ 11

*Ancientree Cabinet Co. v. United States*, 532 F. Supp. 3d 1241 (Ct. Int'l Trade 2021) .............................................................................................................................. 17

*Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ............................................................................................................................ 8

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) .................................................... 7

*Corus Eng'g Steels Ltd. v. United States*, 27 C.I.T. 1286 (Ct. Int'l Trade 2003) ........ 13

*Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317 (Ct. Int'l Trade 2020) ........... 12, 13, 17

*Dongbu Steel Co. v. United States*, 635 F.3d 1363 (Fed. Cir. 2011) ........................... 18

*Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211 (Fed. Cir. 2005) ........ 7

*Hyundai Steel Co. v. United States*, 365 F. Supp. 3d 1294 (Ct. Int'l Trade 2019) ....... 11

*Micron Tech., Inc. v. United States*, 243 F.3d 1301 (Fed. Cir. 2001) ......................... 13, 14

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) ................................................... 8

*SKF USA, Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011) ............................... 8

*Sucocitrico Cutrale Ltda. v. United States*, Slip-Op. 12-71, 2012 WL 2317764 (Ct. Int'l Trade June 1, 2012) ................................................................................... 11

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........................................... 7

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013) .......................................................................................................................... 8

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ...................................................................................... 7

19 U.S.C. § 1677b(a)(7)(A) ......................................................................................... 9

19 U.S.C. § 1677m(d) .................................................................................................. 12, 16

19 U.S.C. § 1977b(a)(1)(B) ......................................................................................... 2

19 U.S.C. § 1977b(a)(7)(B) ......................................................................................... 2

**Regulations**

19 C.F.R. § 351.401(b) ................................................................................................ 11

19 C.F.R. § 351.401(b)(1) ........................................................................................... 10

19 C.F.R. § 351.412(b) ................................................................................................ 10

19 C.F.R. § 351.412(c)(2) ............................................................................ 10

19 C.F.R. § 351.412(d) .................................................................................. 10

*Antidumping Duties; Countervailing Duties: Final Rule*, 62 Fed. Reg. 27,296
    (Dep't Commerce May 19, 1997) ..................................................... 10, 11

**Administrative Decisions**

*Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of
    Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 5792
    (Dep't Commerce Feb. 2, 2022) .............................................................. 14

*Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results
    of Antidumping Duty Administrative Review and Final Determination of No
    Shipments; 2019–2020*, 87 Fed. Reg. 26,343 (Dep't Commerce May 4, 2022)..................... 1, 6

*Notice of Final Determination of Sales at Less Than Fair Value and Negative
    Final Determination of Critical Circumstances: Certain Frozen and Canned
    Warmwater Shrimp From Thailand*, 69 Fed. Reg. 76,918 (Dep't Commerce
    Dec. 23,2004)......................................................................................... 13, 14

*Oil Country Tubular Goods From Ukraine: Preliminary Results of Antidumping
    Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 57,176 (Dep't
    Commerce Sept. 19, 2022) ...................................................................... 14

**Other Authorities**

*Statement of Administrative Action accompanying the Uruguay Round
    Agreements Act*, H. R. Doc. No. 103–826(I), reprinted in 1994 U.S.C.C.A.N.
    4040 ......................................................................................................... 10

Pursuant to USCIT Rule 56.2 and the Court's Scheduling Order (ECF No. 37), Plaintiff Wheatland Tube ("Wheatland" or "Plaintiff") submits the following memorandum of points and authorities supporting Plaintiff's motion for judgment on the agency record.

## RULE 56.2 STATEMENT

A.   <u>Administrative Determination Sought to Be Reviewed:</u> The contested determination is the final determination issued by the U.S. Department of Commerce ("Commerce"), in its 2019-2020 administrative review of the antidumping ("AD") order on circular welded non-alloy steel pipe ("CWP") from the Republic of Korea. Commerce published its final determination as *Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg. 26,343 (Dep't Commerce May 4, 2022) ("*2019-2020 Final*"). The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, No. A-580-809 (Dep't Commerce April 26, 2022) ("*Final IDM*"), P.R. 301.[1]

B.   <u>Issues Presented:</u>

Plaintiff challenges Commerce's decision to grant offsets to the constructed export prices it used in calculating dumping margins in this review in light of Commerce's recognition that the evidence Respondents submitted to support their claims of differences in levels of trade was insufficient to establish their entitlement to such favorable offsets.

---

[1] Citations to documents on the public administrative record are denoted as "P.R." in this brief.

## STATEMENT OF THE FACTS

In calculating dumping margins, Commerce is directed to compare a respondent's U.S. sales prices to normal value at the same level of trade ("LOT") to the extent possible. *See* 19 U.S.C. § 1977b(a)(1)(B)(i). Commerce is further directed to make allowances for differences in prices due to differences in LOTs if those differences are shown to involve the performance of different selling activities and are demonstrated to affect price comparability. *See* 19 U.S.C. § 1977b(a)(7)(A). If different LOTs are established, but the amount of allowance necessary to offset LOT differences for the U.S. prices cannot be determined from the record, Commerce is instructed to make an adjustment to constructed export prices ("CEP") based on indirect selling expenses (the "CEP offset"). *See* 19 U.S.C. § 1977b(a)(7)(B).

Commerce published the antidumping duty order on CWP from Thailand in 1992. *See Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments* (Dep't Commerce Nov. 30, 2021), P.R. 276, at 1 ("*Prelim. IDM*"). Commerce initiated an annual administrative review of that order covering the November 1, 2019 through October 31, 2020 period on January 6, 2021. *Id.* The review covered 24 respondents, and Commerce selected Husteel Co., Ltd. ("Husteel") and Hyundai Steel Company ("Hyundai Steel") as the mandatory respondents for individual examination. *Id.*

In the review immediately prior to this review, Commerce had also selected Husteel and Hyundai Steel as the mandatory respondents. In that review, Commerce preliminarily denied Husteel a CEP offset, but reversed that decision in the final determination. Commerce stated that Husteel had not provided the necessary analysis in support of Husteel's claims of a difference in LOTs, but Commerce also stated that the agency "never informed Husteel that it wished for more information in this regard." *Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No*

2

*Shipments; 2018–2019*, 86 Fed. Reg. 53,631 (Dep't Commerce Sept. 28, 2021), accompanying

Issues and Decision Memorandum at 17 ("*CWP 18-19 IDM*"). Therefore, Commerce "accepted

Husteel's information as sufficient for purposes of this segment of the proceeding" and granted

Husteel a CEP offset. But, Commerce explicitly cautioned, "we are taking advantage of this

opportunity to inform Husteel that in future administrative reviews a more detailed and robust

quantitative analysis of its selling functions will be required for us to consider a CEP offset." *Id.*

 In the review challenged here, Commerce again asked questions regarding LOT

differences to the mandatory respondents and instructed them to provide specific supporting data

and analysis if they claimed a LOT difference. *See Initial Questionnaire to Husteel Co., Ltd.*

(Dep't Commerce Feb. 23, 2021), P.R. 26, at pages A-7 – A-8; *Initial Questionnaire to Hyundai*

*Steel Company* (Dep't Commerce Feb. 23, 2021), P.R. 25, at pages A-7 – A-8.

 Commerce again found Husteel's response to these questions deficient, exactly as it was

in the prior review. Commerce issued supplemental questionnaires to Husteel again directing

Husteel to provide the data and analysis necessary if Husteel sought LOT adjustments.

Commerce specifically noted that Husteel had not provided the requisite quantitative analysis in

support of its LOT claims, and again directed Husteel to show "how the expenses assigned to

POR sales made at different claimed levels of trade impact price comparability," as well as

explain how the information Husteel had submitted actually supported Husteel's LOT claims.

*Supplemental Questionnaire to Husteel*, P.R. 258, at 3. Likewise, Hyundai Steel also failed to

support its claims with a quantitative analysis of price comparability and supporting data, instead

submitting only a qualitative analysis consisting of a chart subjectively self-ranking its selling

functions. *See Hyundai Steel Sec. A Response*, P.R. 57, at A-27 (stating that it "has applied a

quantitative analysis").

Based on the information and analysis the respondents provided, Commerce granted both a CEP offset in the preliminary determination. *Prelim. IDM*, P.R. 276, at 21-23. However, in its briefing, Plaintiff pointed out to Commerce that this decision was contrary to Commerce's current practice and the evidence on the record. *Wheatland Case Brief*, P.R. 291, at 20-26. Plaintiff showed how the evidence that Husteel and Hyundai Steel had submitted failed to meet Commerce's current requirements and did not provide necessary evidence to demonstrate that claimed LOT differences affected price compatibility. *Id.*.

In its final determination, Commerce agreed with Plaintiff regarding the insufficiency of the evidence on the record: "we agree that the quantitative analyses provided by the respondents was inadequate in response to Commerce's initial questionnaire." *Final IDM*, P.R. 301, at 13. Commerce recognized that its "questionnaire requires that the respondent provide a quantitative analysis" addressing price compatibility, not just a qualitative analysis of selling functions. *Id.* "Rather than providing such analysis, each respondent compared employee labor data for the home market to the U.S. market. Neither respondent provided an analysis showing how expenses assigned to sales at different claimed LOTs impacted price comparability." *Id.*

However, Commerce then reasoned that the agency "did not inform the respondents that it required more information." *Id.* Even though Commerce had issued supplemental questions on LOT claims to Husteel, Commerce claimed that those questions were too limited in nature (addressing only the qualitative analysis Husteel had submitted). *Id.*, P.R. 301, at 13-14. Commerce declared that, because the agency did not identify these deficiencies for the respondents and provide them both even further opportunities to provide sufficient evidence, Commerce would disregard its determination that the evidence on the record was insufficient to support granting CEP offsets and instead grant an offset to both respondents. *Id.*, P.R. 301, at 14.

4

Commerce again took the "opportunity to inform all parties that we will continue to examine the issue of quantitative support for such offsets in future reviews of this proceeding," but Commerce did not explain why its prior warning from the previous review on the exact same point was considered insufficient. *See id.*

Commerce then used the dumping margins it calculated for Husteel and Hyundai Steel, with the CEP offsets, to further calculate the dumping margins assigned to the other respondents under review. *2019-2020 Final*, 87 Fed. Reg. at 26,343.

## SUMMARY OF THE ARGUMENT

Commerce recognized that Husteel and Hyundai Steel had failed to meet the burden of proof they bore in order to qualify for a CEP offset in this review. Commerce's decision to grant those offsets regardless of that failure was arbitrary and capricious, as well as unsupported by substantial evidence.

The statute and Commerce's regulations place the burden of proof on the respondent to provide sufficient evidence establishing differences in LOTs that affect price comparability before a CEP offset can be granted. Commerce's established practice, which has been repeatedly affirmed in court decisions, specifically states that a CEP offset is not automatic, and that if respondents do not meet their burden of proof no offsetting adjustment will be granted. By recognizing that the burden of proof had not been met here but deciding to grant the offsets anyway, Commerce acted arbitrarily and capriciously as well as contrary to the statute.

Commerce's reason for doing so, *i.e.*, that it had not given the respondents additional opportunities to cure claimed deficiencies in the evidence they offered, is directly contradictory to Commerce's consistent position that no such second opportunity need be afforded where the burden of proof was affirmatively on the respondents from the outset. This position has been specifically affirmed by this Court, and it is consistent with the statute, congressional intent, and

Commerce's regulations. Commerce's flawed justification here thus makes its determination even more arbitrary.

## STANDARD OF REVIEW

The applicable standard of this Court's review is set forth in 19 U.S.C. § 1516a(b)(1)(B). Pursuant to the statute, the Court will uphold a determination made by Commerce except to the extent that it is found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In order to meet this substantial evidence standard, while Commerce need not address every piece of evidence presented by a party, "Commerce is obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination." *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020); *see also SKF USA, Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011) ("…Commerce also has an 'obligation' to address important factors raised by comments from petitioners and respondents."). In other words, "{t}his standard requires Commerce to examine the record and articulate a satisfactory explanation for its action." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

Moreover, to be upheld, Commerce's determinations must not be "arbitrary, capricious, {or} an abuse of discretion." 19 U.S.C. § 1516a(b)(1)(B)(ii). An agency's actions are arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to

consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983).

## ARGUMENT

**I.    Commerce's Decision to Grant Respondents CEP Offsets in this Review was Unsupported by Substantial Evidence and Was Arbitrary and Capricious**

A.   *As established by statute, regulation, Court decisions, and agency practice, a CEP offset is not automatic, an effect on prices must be demonstrated, and the burden is on the respondent to provide sufficient supporting information and analysis from the outset*

The statute, Commerce's regulations, determinations by the Courts, and Commerce's own practice all make clear that a CEP offset is *not* automatic. Claimed differences in LOTs must be demonstrated to affect price comparability, and that fact must be established by evidence on the record. Moreover, the burden to provide that evidence is squarely on the respondent seeking the favorable price adjustment.

As noted above, the statute requires that any claimed differences in LOTs and any difference in prices underlying such an adjustment must be "<u>shown</u> to be wholly or partly due to a difference in level of trade" that "involves the performance of different selling activities," and "<u>is demonstrated</u> to affect price comparability." 19 U.S.C. § 1677b(a)(7)(A) (emphasis added).

The language in the statute specifically reflects Congress' intent that

> Commerce will carefully investigate whether a level of trade adjustment should be made to increase or decrease normal value. However, if a respondent claims an adjustment to decrease normal value, <u>as with all adjustments which benefit a responding firm, the respondent must demonstrate the appropriateness of such adjustment</u>.

<u>Commerce will require evidence from the foreign producers</u> that the functions performed by the sellers at the same level of trade in the U.S. and foreign markets are similar, and that different selling activities are actually performed at the allegedly different levels of trade…. <u>Because level of trade adjustments may be susceptible to manipulation, Commerce will closely scrutinize claims for such adjustments</u>…..

Where it is established that there are different levels of trade based on the performance of different selling activities, but the data establish that there is a pattern of no price differences, the level of trade adjustment will be zero. No further adjustment is necessary.

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. R. Doc. No. 103–826(I), at 829-830, reprinted in 1994 U.S.C.C.A.N. 4040, 4167-68, ("*SAA*") (emphasis added).

Commerce's regulations likewise require that for any adjustment to prices, it is the respondent seeking that adjustment who "is in possession of the relevant information {and} has the burden of establishing to the satisfaction of {Commerce} the amount and nature of a particular adjustment…." 19 C.F.R. § 351.401(b)(1). Commerce's regulations apply that principle specifically to LOT adjustments. Commerce "will adjust normal value for a difference in level of trade if" it finds both a difference in LOTs and "determines that the difference in level of trade has an effect on price comparability." 19 C.F.R. § 351.412(b). Further, "{s}ubstantial differences in selling activities are a necessary, but not sufficient, condition for determining that there is a difference in the stage of marketing." 19 C.F.R. § 351.412(c)(2). Finally, Commerce will determine that a difference in LOT has an effect on price comparability "only if it is established to the satisfaction of {Commerce} that there is a pattern of consistent price differences." 19 C.F.R. § 351.412(d).

Commerce has explained that these regulations were purposefully shaped "to provide that the Department will not identify levels of trade based solely on selling activities." *Antidumping*

*Duties; Countervailing Duties: Final Rule*, 62 Fed. Reg. 27,296, 27,371 (Dep't Commerce May 19, 1997) ("*Preamble*"). "{A}n analysis of selling activities alone is insufficient to establish the LOT. Rather, the Department must analyze selling functions to determine if levels of trade identified by a party are meaningful." *Id.* Further, Commerce also recognized that if it

> … treated every substantial difference in selling activities as a separate LOT, the Department potentially would be required to address dozens of levels of trade—many of which would be artificial creations. This would result either in denial of LOT adjustments altogether <u>or routine use of the CEP offset. Neither of these results was intended by the URAA</u>.

*Id.* (emphasis added).

Because the burden of proof to establish entitlement to a CEP offset is on the respondent, Commerce stated: "Some commenters suggested that the CEP offset is 'automatic.' This is not the case." *Id.*, 62 Fed. Reg. at 27,372.

This Court has recognized that under this statutory and regulatory regime, "{t}he party seeking a CEP offset bears the burden of establishing that the differences in selling functions performed in the home and US markets are 'substantial.'" *Hyundai Steel Co. v. United States*, 365 F. Supp. 3d 1294, 1300 (Ct. Int'l Trade 2019) (citing *Sucocitrico Cutrale Ltda. v. United States*, Slip-Op. 12-71, 2012 WL 2317764, at *5 (Ct. Int'l Trade June 1, 2012) and 19 C.F.R. § 351.401(b)). Likewise, "{w}hile it is Commerce's responsibility to determine if a petitioner qualifies for a CEP offset, it is the responsibility of the respondent requesting the CEP offset to procure and present the relevant evidence to Commerce." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 556, 616 F. Supp. 2d 1354, 1374 (Ct. Int'l Trade 2009). And "{t}he party seeking a CEP offset ultimately bears the burden of demonstrating substantial differences in selling activities across the LOTs." *Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317,

1345 (Ct. Int'l Trade 2020). Where the respondent has not met that burden as required, this Court has affirmed Commerce's decision to grant neither a LOT adjustment nor a CEP offset. *See id.*

In *Dong-A Steel*, the Court rejected the argument that Commerce could not decline to make a CEP adjustment even where "Commerce never requested any additional information or clarifications… in any supplemental questionnaire or otherwise indicated that any deficiency existed in the record regarding this issue." *Dong-A Steel*, 475 F. Supp. 3d at 1347, fn. 22 (quotation marks omitted). The Court explained that this is because "{t}he burden falls to the party seeking the CEP offset to provide the requisite evidence that would allow Commerce to determine that a CEP offset adjustment is warranted." *Id.* "That Commerce did not request any additional information beyond what was provided by {the respondent} does not discredit the validity of the conclusion drawn from that evidence." *Id.* The Court also held that "Commerce had no obligation under 19 U.S.C. § 1677m(d) to work with {the respondent} to correct for 'deficiencies' in the record, since as discussed above, it does not appear that deficiencies existed in the first place." *Id.*

The respondent in *Dong-A Steel*, like respondents here, was given an opportunity to submit what evidence it believed supported its claim that its U.S. sales were made at a different LOT. That respondent had submitted information on what sales activities it performed for its various sales which it "organized … by intensity (high, medium, or low)." *Id.*, 475 F. Supp. 3d at 1345. Commerce reviewed that evidence but found it was insufficient to establish different LOTs, as the differences in sales activities were not substantial in Commerce's view. *Id.*, 475 F. Supp. 3d at 1346. The Court affirmed Commerce's determination, and, as quoted above, disagreed with the respondent that Commerce was required to work with the respondent to further fill out the record before finding the evidence insufficient to meet the respondent's

burden. "In short, Commerce did not find the record to be deficient, merely that {the respondent's} reasoning -- based on the same evidence -- was uncompelling." *Id.* In other words, the insufficiency of the evidence was not a deficiency in the record. The burden was on the respondent to meet the standard of sufficiency, it did not shift to Commerce to treat the respondent's failure as a deficiency.

Because "{t}he burden of proof is upon the claimant to prove entitlement" to a CEP offset, this Court has also explained "{i}t is not automatic each time export price is constructed." *Corus Eng'g Steels Ltd. v. United States*, 27 C.I.T. 1286, 1290 (Ct. Int'l Trade 2003). That conclusion has also been reached by the Court of Appeals for the Federal Circuit: "the CEP offset will not be automatic." *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1316 (Fed. Cir. 2001).

In practice, Commerce has likewise stated that "the respondent bears the burden of demonstrating that it is entitled to a CEP offset." *Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 76,918 (Dep't Commerce Dec. 23,2004), accompanying Issues and Decision Memorandum at Comment 5 ("*Shrimp 2004 IDM*"). Commerce has rejected arguments that would result in a CEP offset being "automatically granted," quoting from the Federal Circuit in *Micron Technology* that "{t}he CEP offset will not be automatic." *Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 5792 (Dep't Commerce Feb. 2, 2022), accompanying Issues and Decision memorandum at 16.

Commerce has also stated that a respondent is not entitled to a CEP offset simply because an offset was granted to another respondent, or in another proceeding altogether. The respondent

must make a showing on the record presently before Commerce. *Shrimp 2004 IDM* at Comment 5. *See also Oil Country Tubular Goods From Ukraine: Preliminary Results of Antidumping Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 57,176 (Dep't Commerce Sept. 19, 2022), accompanying Issues and Decisions Memorandum at 12 (citing to *Micron Technology* that a CEP offset is not automatic and "{t}hus, the decision to grant a CEP offset is a fact-specific inquiry that must be made based on the record. Commerce is not bound by its determinations in a prior segment of a proceeding because each segment has its own unique factual record. Commerce must examine each record on its own merits.").

Indeed, a few years ago (predating the underlying review), Commerce revised its practice somewhat to be more in line with the statute and its regulations. As a result, Commerce requires respondents to provide more specific information supporting claims for LOT differences and CEP offset eligibility: "{s}ince 2018, Commerce has required respondents to provide quantitative evidence in support of their LOT claims. In other recent final determinations, Commerce has declined to find the existence of different LOTs when the record lacked sufficient quantitative evidence corroborating a respondent's LOT claims." *Certain Frozen Warmwater Shrimp From Thailand: Final Results of Antidumping Duty Administrative Review; 2019–2020*, 87 Fed. Reg. 69 (Dep't Commerce Jan. 3, 2022), accompanying Issues and Decision Memorandum at 17 ("*Shrimp 2022 IDM*"). Commerce has rejected purely qualitative analyses of selling functions and even quantitative analyses that do not show price differences were due to LOT differences, explaining that "it is the respondent's burden to demonstrate that price comparability is affected by the difference in LOTs, not other factors such as volume sold." *Id.* at 20. Thus, where a respondent "did not demonstrate quantitatively that the price differences between the claimed LOTs were on account of those differences in selling activities," Commerce

held that the respondent "did not meet its burden of presenting sufficient evidence to support its request for a LOT adjustment and/or CEP offset…." *Id.* at 20, 31.

In sum, Commerce's practice, its regulations, the Courts, and Congress have all established that: (1) a CEP offset is not granted automatically; (2) a CEP offset will not be granted unless it is demonstrated that differences in LOT affect price comparability; and (3) the burden of proof to establish eligibility for that offset is entirely upon the respondent seeking that offset. Commerce is not required to hold the respondent's hand to ensure that the respondent has submitted evidence sufficient to meet that burden; that burden is the respondent's to meet. As reviewed above, in other determinations, Commerce's practice has followed these authorities and refused to automatically grant a CEP offset, even where a respondent argues that Commerce failed to shoulder some share of this burden and work with the respondent to create a sufficient record before making a determination on CEP offset eligibility.

B.  *Commerce explicitly recognized that respondents failed to meet that burden in this review, and Commerce's decision to grant them offsets anyway was therefore arbitrary and capricious as well as contrary to the statute*

In the challenged review, however, Commerce departed from its practice and the authorities cited above and the directions of the statute, and Commerce instead treated the CEP offset as automatic. Indeed, Commerce expressly recognized that the "quantitative analyses provided by the respondents was inadequate." *Final IDM*, P.R. 301, at 13. "Neither respondent provided an analysis showing how expenses assigned to sales at different claimed LOTs impacted price comparability." *Id.* Commerce recognized that the record before it here did not contain evidence establishing differences in LOTs or that those differences affected price comparability. The respondents' burden had unambiguously not been met.

But rather than declining to grant any offset as directed by the statute, its own regulations and practice, and in line with decisions of the Courts, Commerce relied on the fact that the

agency had not identified all the deficiencies in the evidence Husteel and Hyundai Steel had decided to submit nor provided them further opportunities to overcome those deficiencies then they were already given, which Commerce here reasoned it was required to do under 19 U.S.C. § 1677m(d). *Id.*, P.R. 301, at 14. But this Court has in the past specifically affirmed Commerce's consistent position that "Commerce had no obligation under 19 U.S.C. § 1677m(d) to work with {the respondent} to correct for 'deficiencies' in the record" regarding claimed differences in LOTs, because the burden is firmly on the respondent to support its claim for this beneficial adjustment. *Dong-A Steel*, 475 F. Supp. 3d at 1347, fn. 22.

Commerce failed to explain why it was shifting the burden off the respondents here or to how relieving them of that burden in full was even allowed under its regulations and the directions of the statute. As the Court and the Federal Circuit, to say nothing of Commerce in past determinations, have held, that burden does not shift. Commerce is required to address the record in front of it: if that record is insufficient to support granting a CEP offset, one cannot be granted. But here Commerce instead automatically granted the offset *because* the record was insufficient to make the necessary showings to support a CEP offset. This result turns the statute, regulations, and Court-affirmed Commerce practice on its head.

In addition to explaining its compliance with the statute and regulations, Commerce must provide a reasoned explanation for departing from its established practice. *See*, *e.g.*, *Ancientree Cabinet Co. v. United States*, 532 F. Supp. 3d 1241, 1260 (Ct. Int'l Trade 2021) ("Though Commerce's prior determinations are not legally binding, its exercise of discretion is constrained by the need to provide an adequate explanation for any deviation from its past practice and interpretations."). Failing to do so reduces the departing agency decision to an arbitrary and capricious action. *See*, *e.g.*, *Dongbu Steel Co. v. United States*, 635 F.3d 1363, 1371 (Fed. Cir.

14

2011) ("We have indicated that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.").

Commerce provided no such explanation here.[2] And, even if it had sought to explain its change in practice, Commerce would still need to recognize its regulations and the statute which all disallow such an off-hand dismissal of the burden of proof.

Despite recognizing the record here lacked substantial evidence to support the CEP offsets it granted, Commerce eliminated the burden on the respondents and treated the CEP offset as automatic. Commerce has previously repeated that this offset is not automatic, and Commerce specifically structured its regulations to place the burden on respondents in order to prevent it from becoming automatic. Moreover, Commerce's decisions to not automatically grant this offset where that burden has not been met have been repeatedly upheld by the Courts specifically for that reason. That approach was consistent with Congress' intent that the respondent bear the burden to demonstrate that is appropriate for Commerce to make such a favorable offset, in order to prevent manipulation and achieve accurate dumping margins. Commerce's conflicting determination in this review is not in accordance with the law as it unreasonably departs from Congress' instructions and  arbitrarily from Commerce's established practice, and it is additionally explicitly unsupported by substantial evidence.

## CONCLUSION AND RELIEF SOUGHT

For the reasons described above, Commerce's determination to grant Husteel and Hyundai Steel CEP offsets in this review was—as Commerce explicitly recognized—unsupported by substantial evidence and was further arbitrary and capricious, departing from a

---

[2] While in the prior review period Commerce also eliminated the burden on Husteel to support a CEP offset, that determination too was an unexplained departure from Commerce's widely established practice.

position Commerce has repeatedly had affirmed by this Court. As that position had reflected the statute and conformed with Congressional intent, Commerce's departure from it here was also not in accordance with the law.

Plaintiff therefore respectfully requests that this Court remand this action to Commerce with instructions that Commerce revise its determination on granting these CEP offsets so that it is in line with Commerce's established practice, Commerce's specific regulations, decisions of this and other Courts, the statute, and Congress' express intent, and to recalculate the dumping margins assigned to Husteel, Hyundai Steel, and the other respondents in the challenged review as necessary.

Respectfully submitted,

/s/  Nicholas J. Birch_____
Roger Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland Tube*

Dated: October 5, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Schagrin Associates hereby certifies that the 56.2 Brief of

Plaintiff Wheatland Tube, dated October 5, 2022, complies with the word-count limitation set

out in 2(B)(1)(a) of this Court's Standard Chambers Procedures and this Court's Scheduling

Order of July 29, 2022 (ECF No. 37), limiting Rule 56.2 briefs to 14,000 words. This response

brief contains 4,765 words according to the word count function of the word processing software

used to prepare the brief.

Respectfully submitted,

/s/  Nicholas J. Birch_____
Roger Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland Tube*

Dated: October 5, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| WHEATLAND TUBE,<br><br>   *Plaintiff,*<br><br>  v.<br><br>UNITED STATES,<br><br>   *Defendant,*<br><br>*and*<br><br>HYUNDAI STEEL,<br><br>SEAH STEEL CORPORATION,<br><br>NEXTEEL CO., LTD., *and*<br><br>HUSTEEL CO., LTD.,<br><br>   *Defendant-Intervenors* | **Court No. 22-00160** |

**<u>PROPOSED ORDER</u>**

Upon consideration of the Motion for Judgment on the Agency Record filed by Plaintiff

Wheatland Tube, and upon consideration of all other papers and proceedings herein, it is hereby

**ORDERED** that the motion is **GRANTED**; and it is further

**ORDERED** that the final determination of the Department of Commerce published as

*Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results of Antidumping*

*Duty Administrative Review and Final Determination of No Shipments; 2019–2020*, 87 Fed. Reg.

26,343 (Dep't Commerce May 4, 2022) is hereby remanded for reconsideration in accordance with this opinion.

_____

HON. TIMOTHY M. REIF, JUDGE

Dated: _____, 2022
      New York, New York