## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WHEATLAND TUBE,** | |
| **Plaintiff,** | |
| **v.** | **Before:  Honorable Timothy M. Reif,** |
| **UNITED STATES,** | **Judge** |
| **Defendant,** | **Court No. 22-00160** |
| **and** | |
| **HYUNDAI STEEL COMPANY,** | **PUBLIC DOCUMENT** |
| **SeAH STEEL CORPORATION,** | |
| **NEXTEEL CO., LTD., and** | |
| **HUSTEEL CO., LTD.,** | |
| **Defendant-Intervenors.** | |

### RESPONSE OF DEFENDANT-INTERVENOR, HYUNDAI STEEL COMPANY, IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

**Robert G. Gosselink**
**Jarrod M. Goldfeder**
**TRADE PACIFIC PLLC**
**700 Pennsylvania Avenue, SE**
**Suite 500**
**Washington, D.C.  20003**
**(202) 223-3760**

*Counsel to Hyundai Steel Company*
Dated:  January 5, 2023               *Defendant-Intervenor*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................... ii

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT PURSUANT TO RULE 56.2 .............................................................. 1

        A.      Administrative Determination Under Review ...................................................... 1

        B.      Issues Presented ................................................................................................ 2

III.    STATEMENT OF FACTS ......................................................................................... 2

IV.     SUMMARY OF ARGUMENT .................................................................................. 2

V.      STANDARD OF REVIEW ....................................................................................... 3

VI.     COMMERCE CORRECTLY DETERMINED THAT HYUNDAI STEEL WAS
        ENTITLED TO A CEP OFFSET ............................................................................... 3

VII.    CONCLUSION ........................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Statutes**

19 U.S.C. § 1677m(d).............................................................................................................3


**Administrative Determinations**

Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea,
79 Fed. Reg. 17,503 (Dep't Commerce Mar. 28, 2014) (final results AD admin. rev.),
and accompanying Issues and Decision Memorandum (Mar. 24, 2014)........................................5

Certain Cut-to-Length Carbon Steel Plate from Mexico, 65 Fed. Reg. 13,368 (Dep't Commerce
Mar. 13, 2000) (final results AD admin. rev.), and accompanying Issues and Decision
Memorandum (Mar. 6, 2000)..........................................................................................................5

Certain Pasta from Italy, 82 Fed. Reg. 57,428 (Dept' Commerce Dec. 5, 2017) (final results
AD admin. rev.; 2015-2016), and accompanying Issues and Decision Memorandum
(Nov. 29, 2017).................................................................................................................................5

Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 87 Fed. Reg. 26,343
(Dep't Commerce May 4, 2022) (final results of antidumping duty admin. rev.; 2019-2020),
and accompanying unpublished Issues and Decision Memorandum for the Final Results
(Apr. 26, 2022).................................................................................................................................1

Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 86 Fed. Reg. 69,225
(Dep't Commerce Dec. 7, 2021) (prelim. results of antidumping duty admin. rev.;
2019-2020), and accompanying Preliminary Decision Memorandum (Nov. 30, 2021) ....... 5-6, 10

Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 86 Fed. Reg. 53,631
(Dep't Commerce Sept. 28, 2021) (final results of antidumping duty admin. rev.; 2018-2019),
and accompanying Issues and Decision Memorandum (Sept. 21, 2021) .......................................7

Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 86 Fed. Reg. 15,912
(Dep't Commerce Mar. 25, 2021) (prelim. results of antidumping duty admin. rev.;
2018-2019), and accompanying Preliminary Decision Memorandum (Mar. 19, 2021).................7

Hyundai Steel's Response Brief
Court No. 22-00160

**RESPONSE OF DEFENDANT-INTERVENOR, HYUNDAI STEEL,
IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION
<u>FOR JUDGMENT ON THE AGENCY RECORD</u>**

## I.      <u>INTRODUCTION</u>

Defendant-Intervenor, Hyundai Steel Company, respectfully submits this response in opposition to the Rule 56.2 Motion for Judgment on the Agency Record filed in this action by the Plaintiff, Wheatland Tube ("Plaintiff" or "Wheatland Tube").  For the reasons described herein, Defendant-Intervenor respectfully requests that the Court deny Plaintiff's motion for judgment on the agency record, ECF No. 38 (Oct. 5, 2022), because the specific determination that it challenges was supported by substantial record evidence and was otherwise in accordance with law.

## II.     <u>STATEMENT PURSUANT TO RULE 56.2</u>

### A.      <u>Administrative Determination Under Review</u>

This action is an appeal from the U.S. Department of Commerce's ("Commerce") final results of the 28th administrative review in <u>Circular Welded Non-Alloy Steel Pipe from the Republic of Korea</u>, 87 Fed. Reg. 26,343 (Dep't Commerce May 4, 2022) (final results AD admin. rev.; 2019-2020) ("<u>Final Results</u>"), PD 309.[1]  The challenged findings and conclusions of fact and law are set out primarily in Commerce's unpublished "Issues and Decision Memorandum for the Final Results of the 2019-2020 Administrative Review of the Antidumping Order on Circular Welded Non-Alloy Steel Pipe from the Republic of Korea," Case No. A-580-809 (Apr. 26, 2022) ("<u>Final Decision Memo</u>"), PD 301.

---

[1] Citations to the administrative record are to the confidential record document number ("CD") or public record document number ("PD") followed by the page or exhibit number based on the July 6, 2022, administrative index lists filed with this court.  <u>See</u> ECF No. 35.

Hyundai Steel's Response Brief
Court No. 22-00160

      B.    <u>**Issues Presented**</u>

     Defendant-Intervenor agrees with and incorporates herein the "Issue Presented for Review" section of Defendant's response brief, ECF No. 39 (Dec. 5, 2022), p. 2.

## III.   <u>STATEMENT OF FACTS</u>

     Defendant-Intervenor agrees with and incorporates herein the "Statement of Facts" section of Defendant's response brief, ECF No. 39 (Dec. 5, 2022), pp. 2-4.

## IV.   <u>SUMMARY OF ARGUMENT</u>

     Defendant-Intervenor agrees with and incorporates herein the "Summary of the Argument" section of Defendant's response brief, ECF No. 39 (Dec. 5, 2022), pp. 4-5. Additionally, Defendant-Intervenor emphasizes that Commerce reasonably and correctly determined to grant Hyundai Steel a constructed export price ("CEP") offset based on substantial evidence on the record before it demonstrating that Hyundai Steel's home market level of trade ("LOT") was at a different and substantially more advanced marketing stage than the LOT at which Hyundai Steel made CEP sales to its affiliated parties—Hyundai Steel USA, Inc. ("HSU") and Hyundai Corporation USA ("HC(USA)")—in the United States.

     Furthermore, Plaintiff's allegation that Commerce's determination was "arbitrary and capricious" is without merit. Commerce's determination was consistent with its determination in the immediately preceding administrative review to grant Hyundai Steel a CEP offset based on comparable record evidence. And Plaintiff fails to acknowledge that it never availed itself of the opportunity to submit comments to Commerce, in a timely manner, about any aspects of Hyundai Steel's questionnaire responses including, in particular, with regard to the qualitative and quantitative data provided to support Hyundai Steel's entitlement to a CEP offset.

Hyundai Steel's Response Brief
Court No. 22-00160

## V.   <u>STANDARD OF REVIEW</u>

Defendant-Intervenor agrees with and incorporates herein the "Standard of Review"

section of Defendant's response brief, ECF No. 39 (Dec. 5, 2022), pp. 5-7.

## VI.   <u>COMMERCE CORRECTLY DETERMINED THAT HYUNDAI STEEL WAS ENTITLED TO A CEP OFFSET</u>

Defendant-Intervenor agrees with and incorporates herein Defendant's arguments that

Commerce correctly granted Hyundai Steel a CEP offset in the <u>Final Results</u>.  <u>See</u> ECF No. 39,

pp. 7-15.  Defendant-Intervenor briefly supplements Defendant's response to assist the Court in

its consideration of the issue presented.

Plaintiff alleges that Commerce granted Hyundai Steel a CEP offset based on an

insufficient record.  <u>See</u>, <u>e.g.</u>, Plaintiff's Rule 56.2 Memorandum, ECF No. 38 (Oct. 5, 2022), at

5.  Plaintiff focuses solely on language from the <u>Final Decision Memo</u> in which Commerce

opined on the sufficiency of the <u>quantitative</u> analysis that Hyundai Steel submitted in its

questionnaire responses with respect to the CEP offset analysis.  Yet, Plaintiff cannot overcome

the fact that at no point during the course of the administrative review did Commerce ask

Hyundai Steel for further clarification, additional documentation, or any different types of

quantitative analysis to support the company's CEP offset claim.  In that regard, Defendant-

Intervenor notes that the statute expressly provides that:

> {I}f the administering authority or the Commission determines that a response to a
> request for information under this title does not comply with the request, the
> administering authority or the Commission (as the case may be) shall promptly
> inform the person submitting the response of the nature of the deficiency and shall,
> to the extent practicable, provide that person with an opportunity to remedy or
> explain the deficiency in light of the time limits established for the completion of
> investigations or reviews under this title.

19 U.S.C. § 1677m(d).

Hyundai Steel's Response Brief
Court No. 22-00160

  In the underlying review, Commerce never informed Hyundai Steel that additional explanation or analysis was necessary prior to issuing its preliminary results.  In fact, Commerce issued a comprehensive supplemental questionnaire seven months after Hyundai Steel submitted its initial response to Section A of the Commerce's questionnaire, but Commerce chose not to ask any follow-up questions concerning the CEP offset-related information contained in Hyundai Steel's initial response.  <u>See</u> Commerce's Supplemental Questionnaire to Hyundai Steel, CD 129, PD 261 (Oct. 25, 2021).  Commerce thus had sufficient time to request and review any additional information on the CEP offset issue if Commerce believed that any deficiencies existed.  Under the statute, Commerce could not penalize Hyundai Steel, including by disallowing a CEP offset, given that Hyundai Steel provided all requested information in the initial questionnaire response, and Commerce never requested further documentation or clarification.  Thus, contrary to Plaintiff's claim, Commerce did not act in an "arbitrary and capricious" manner, Plaintiff's Rule 56.2 Memorandum at 5 and 15-16, but rather, Commerce acted fully consistent with its statutory obligations.

  Plaintiff also fails to mention that Wheatland's case brief, submitted after Commerce preliminarily granted Hyundai Steel a CEP offset, was the first instance during the course of the underlying administrative review in which Wheatland raised any concern regarding any of the information that Hyundai Steel submitted on the CEP offset issue.  Indeed, other than submissions related to its "particular market situation" allegation, Wheatland did not make any substantive filings prior to the <u>Preliminary Results</u>, including no comments on the CEP offset issue or any other aspect of Hyundai Steel's questionnaire responses.  If Wheatland had legitimate concerns about the record evidence supporting Hyundai Steel's CEP offset claim, then Wheatland could have and should have filed comments soon after Hyundai Steel submitted its

Hyundai Steel's Response Brief
Court No. 22-00160

Section A questionnaire response on March 23, 2021.  Instead, Wheatland remained silent on

this issue until it raised the issue for the first time in its January 7, 2022, case brief, which was

more than <u>nine months</u> after Hyundai Steel submitted the relevant information.  <u>See</u> Wheatland's

Case Brief (Jan. 7, 2022), CD 170, PD 291.  In this regard, Commerce frequently has stated that

the case brief stage of an administrative proceeding is too late to raise an issue that would require

the collection of additional information because, by that point, the factual record is closed.[2]

     Furthermore, while Plaintiff focuses on the quantitative facet of Hyundai Steel's CEP

offset claim, Plaintiff ignores the fact that Commerce granted a CEP offset, in part, based on the

qualitative aspects of Hyundai Steel's submitted evidence.  Specifically, Commerce provided the

following detailed explanation for why it granted a CEP offset in its preliminary decision:

> We examined the differences in selling functions reported in Hyundai Steel's
> responses to our requests for information. Hyundai Steel reported two types of
> customers in the home market: end-users and distributors.  The selling activities
> associated with the two types of customers did not differ; therefore, we consider
> all home-market sales to constitute one LOT.  In the U.S. market, Hyundai Steel
> reported CEP sales of subject merchandise to HSU who then sells it to either
> unaffiliated customers or HC(USA) who, in turn, will then sell it to its own
> unaffiliated customers.  The selling activities associated with these two channels
> of distribution did not differ; therefore, we preliminarily consider all U.S. sales to
> constitute one LOT.  We compared the selling activities at the CEP LOT with the

---

[2] <u>See</u>, <u>e.g.</u>, <u>Certain Pasta from Italy</u>, 82 Fed. Reg. 57,428 (Dept' Commerce Dec. 5, 2017)
(final results AD admin. rev.; 2015-2016), and accompanying Issues and Decision Memorandum
(Nov. 29, 2017), at cmt. 2 ("The petitioners did not raise this aspect of Ghigi/Zara's reporting
methodology to the Department's attention until the case brief phase of the review and, thus, as a
practical matter it is too late in the proceeding for the Department to gather the necessary
information from Ghigi/Zara that would enable the Department to reclassify these expenses.");
<u>Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea</u>, 79 Fed.
Reg. 17,503 (Dep't Commerce Mar. 28, 2014) (final results AD admin. rev.), and accompanying
Issues and Decision Memorandum (Mar. 24, 2014), at cmt. 1 ("Dongbu did not raise this issue
until the filing of its case brief, which is too late for us to consider it"); <u>Certain Cut-to-Length
Carbon Steel Plate from Mexico</u>, 65 Fed. Reg. 13,368 (Dep't Commerce Mar. 13, 2000) (final
results AD admin. rev.), and accompanying Issues and Decision Memorandum (Mar. 6, 2000), at
cmt. 3 ("For purposes of this administrative review, the issue was not raised on the record of this
proceeding until the case briefs were filed, which was too late for us to give full consideration to
the issue and gather additional information and argument, if necessary").

Hyundai Steel's Response Brief
Court No. 22-00160

selling activities at the home market LOT and found, after deducting selling
functions corresponding to economic activities in the United States, *i.e.*, those
performed by Hyundai Steel's U.S. affiliates, that these levels were substantially
dissimilar. Hyundai Steel reported that CEP sales involve no or lower levels of:
(1) sales forecasting and strategic/economic planning/market research; (2)
personnel training/exchange; (3) advertising; (4) freight and delivery
arrangement; (5) sales/marketing; (6) order input/processing; (7) inventory
maintenance; (8) engineering services/technical assistance; and (9) warranty
service relative to sales at the home market level.  Additionally, Hyundai Steel
provided support for its claims that its home market selling activities were more
advanced in the home market in the four core selling functions evaluated by
Commerce:  (1) sales and marketing support; (2) freight and delivery; (3)
inventory maintenance; and (4) and technical support.  Therefore, we
preliminarily determine the home market sales are at a more advanced stage of
distribution than the CEP LOT.

Because there is only one LOT in the home market, we were unable to calculate
an LOT adjustment based on Hyundai Steel's home market sales of the domestic
like product, and we have no other information that provides an appropriate basis
for determining an LOT adjustment.  Moreover, because the CEP LOT did not
exist in the home market, there is no basis for an LOT adjustment.  We find that
Hyundai Steel provided source documentation, requested by Commerce in the
initial questionnaires, that supports the performance of specific selling activities
that each company claimed to have undertaken for different reported channels of
distribution.  Specifically, Hyundai Steel provided documentation establishing
that certain reported selling activities were undertaken in certain channels and not
in others (*e.g.*, sales forecasting, market research, strategic/economic planning for
comparison market sales, but not for sales to the United States).  Further, Hyundai
Steel also provided the quantitative analysis requested by Commerce in the initial
questionnaires that is substantiated with source documents to show how:  (1) the
expenses for sales made at different claimed LOTs impact price comparability; or
(2) the claimed levels of intensity for the selling activities reported in the selling
functions chart are quantitatively supported.  Accordingly, for Hyundai Steel's
CEP sales, we made a CEP-offset adjustment in accordance with section
773(a)(7)(B) of the Act. . . .

Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 86 Fed. Reg. 69,225 (Dep't

Commerce Dec. 7, 2021) (prelim. results of antidumping duty admin. rev.; 2019-2020), PD 284,

and accompanying unpublished "Decision Memorandum for the Preliminary Results of

Antidumping Duty Administrative Review and Preliminary Determination of No Shipments"

(Nov. 30, 2021) ("Preliminary Decision Memo"), at 22-23 (footnotes omitted), PD 276.  Thus,

Hyundai Steel's Response Brief
Court No. 22-00160

Plaintiff overlooks that Commerce's decision relied, in large part, on the qualitative aspects of

Hyundai Steel's submitted information supporting its entitlement to a CEP offset.  Commerce's

robust preliminary analysis confirms that Hyundai Steel met its burden of proof for a CEP offset.

Plaintiff also ignores the fact that Hyundai Steel's reporting in the 28th administrative

review at issue in this action, with respect to the CEP offset issue, was substantially similar to the

information in the preceding (27th) administrative review in which Commerce also granted a

CEP offset.  Indeed, Commerce's analysis in the 27th administrative review largely was identical

to the underlying 28th administrative review in terms of the activities that Hyundai Steel reported

for the home market LOT versus the CEP LOT, Commerce's conclusion that the home market

LOT was "at a more advanced stage of distribution than the CEP LOT," and Commerce's

finding that Hyundai Steel had provided adequate source documentation and a sufficient

quantitative analysis to support its entitlement to a CEP offset.  See Circular Welded Non-Alloy

Steel Pipe from the Republic of Korea, 86 Fed. Reg. 15,912 (Dep't Commerce Mar. 25, 2021)

(prelim. results of antidumping duty admin. rev.; 2018-2019), and accompanying Preliminary

Decision Memorandum (Mar. 19, 2021), at 18-19.

Importantly, Wheatland did not challenge Commerce's preliminary CEP offset decision

in the previous administrative review despite the nearly identical factual evidence and analysis.

See Circular Welded Non-Alloy Steel Pipe from the Republic of Korea, 86 Fed. Reg. 53,631

(Dep't Commerce Sept. 28, 2021) (final results of antidumping duty admin. rev.; 2018-2019),

and accompanying Issues and Decision Memorandum (Sept. 21, 2021).  Plaintiff cannot

reconcile its claim that Commerce's CEP offset determination in the Final Results was not

reasonable with the fact that Commerce granted a CEP offset in the preceding 27th administrative

review based upon the same type of evidentiary support and analysis.

Hyundai Steel's Response Brief
Court No. 22-00160

Furthermore, Plaintiff's substantive arguments lack merit.  Commerce provided little

guidance as to how the quantitative analysis should be presented except to note that it should

"show{} how the expenses assigned to POI/POR sales made at different claimed levels of trade

impact price comparability" and that the analysis should not consider direct expenses.  See Initial

Questionnaire to Hyundai Steel, PD 25 (Feb. 23, 2021), at p. A-8.  Separately, Commerce

instructed Hyundai Steel to "Report level of intensity information using a scale of zero to ten in

which five represents a sale with average associated selling expenses, and level of intensity

information is reported in relation to this baseline of five."  Id. at p. A-15.

In accordance with Commerce's questionnaire instructions, Hyundai Steel presented a

detailed quantitative analysis in the form and manner request.  See Hyundai Steel's Section A

Response (Mar. 23, 2021), at pp. A-27 to A-29 and Exhibit A-13-A, CD 6 & 9, PD 38 & 40.

Hyundai Steel described its quantitative analysis as follows:

> As shown in **Exhibit A-13-A**, Hyundai Steel has applied a quantitative
> analysis by evaluating sales activities using a scale from "10" to "0."  As the
> Department is aware, selling functions are contingent on staffing levels, and
> Hyundai Steel's sales operations are mostly devoted to the home market.  Thus,
> Hyundai Steel has classified all such home market selling functions as "10."
> Then, Hyundai Steel applied this HM scale "10" to the U.S. market on a relative
> basis using the quantitative analysis shown in the exhibit.  In particular, Hyundai
> Steel has multiplied the HM scale "10" by the ratio of Home Market to CEP sales
> personnel to calculate an intensity factor for U.S. sales.

> Specifically, Hyundai Steel has evaluated the following selling functions
> by applying the number of the salesperson:  (1) Sales Forecasting / Strategic &
> Economic Planning / Market Research; (2) Advertising; (3) Sales/Marketing
> Support; (4) Personnel Training/Exchange; (5) Freight and Delivery Arrangement;
> and (6) Order Input/Processing.

> Selling activities such as Inventory Maintenance, Engineering
> Services/Technical Assistance, and Warranty Service are evaluated based on the
> existence of such activities.  In other words, if such activities were conducted,
> Hyundai Steel valued them at "10."  As for Inventory Maintenance, Hyundai Steel
> has valued the level of intensity as "10" for the Home Market only, as the
> majority of Hyundai Steel's U.S. sales are produced to order so that U.S. sales do

Hyundai Steel's Response Brief
Court No. 22-00160

not incur warehousing expenses.  Hyundai Steel marked "10" for Engineering
Services/Technical Assistance for both Home Market sales and U.S. sales as
Hyundai Steel performs technical services for its customers regardless of the sales
market.  Hyundai Steel provided "Warranty Service" for sales in both the Home
Market and the U.S. market, and thus market them as "10."  For clarification,
Hyundai Steel demonstrates valuation methods conducted for a quantitative
analysis regarding each selling activity in **Exhibit A-13-A**.

Id. at A-27 to A-28, CD 6, PD 38.

Thus, in addition to considering the number of salespersons for purposes of its

quantitative analysis for certain activities, Hyundai Steel also evaluated certain selling functions

(e.g., inventory maintenance, engineering services/technical assistance, and warranty service)

based on the existence of such activities.  Hyundai Steel explained how its quantitative analysis

supported the claimed levels of intensity for the reported selling activities and, in turn, that the

home market LOT was at a different and more advanced stage of distribution than the CEP LOT:

> Using the quantitative analysis rates calculated in **Exhibit A-13-A** using
> the methodology described above in question no. 3.a.iv, the record confirms that
> Hyundai Steel's selling activities performed in selling to HSU at the CEP level of
> trade are not as intense as the selling activities that HSU performs in selling to
> unaffiliated U.S. customers.  **Exhibit A-13-A** summarizes the selling functions
> that Hyundai Steel performed in selling to HSU or HC(USA), and HSU or
> HC(USA) performed in selling to unaffiliated U.S. customers.  This table and
> corresponding quantitative analysis confirm that Hyundai Steel performed few
> selling functions to make sales to HSU or HC(USA) at the CEP level of trade
> because, quite simply, HSU or HC(USA) was responsible for making sales to
> unaffiliated U.S. customers.  The only selling function that Hyundai Steel
> performed to any meaningful degree was the provision of logistical services.  In
> contrast, HSU or HC(USA) provided sales support, training services, and sales-
> related administrative activities to its U.S. customers to a far greater extent than
> Hyundai Steel provided such services when making sales to HSU or HC(USA).
> This confirms Hyundai Steel's relatively limited role in making sales to the
> United States beyond manufacturing the MUC, accepting and processing orders
> from HSU or HC(USA), and arranging for the transport of such merchandise to
> the designated delivery place.

Id. at A-28 to A-29.

Hyundai Steel thus demonstrated both qualitatively and quantitatively that its home

market LOT was at a different and more advanced market stage than the CEP LOT as measured

Hyundai Steel's Response Brief
Court No. 22-00160

by the magnitude and level of intensity of the selling activities performed at each LOT.  Hyundai

Steel's quantitative analysis corroborated and supported Hyundai Steel's qualitative explanations

and supporting documentation regarding the claimed levels of intensity for the reported selling

activities and corresponding levels of indirect selling expenses given the more labor-intensive

nature of supporting sales at the home market LOT.  As such, Commerce appropriately and

reasonably rejected Wheatland's arguments and granted a CEP offset to Hyundai Steel in the

<u>Final Results</u> equal to the sum of the home market indirect selling expenses (capped by the

amount of U.S. indirect selling expenses deducted in the CEP calculation).  <u>See</u> <u>Preliminary</u>

<u>Decision Memo</u> at 23.

## VII.   <u>CONCLUSION</u>

For the reasons set forth above, Defendant-Intervenor respectfully requests that the Court

deny Plaintiff Wheatland Tube's Rule 56.2 motion for judgment upon the agency record and find

that Commerce's decision to grant Hyundai Steel a CEP offset in the final results of the 28th

administrative review involving <u>Circular Welded Non-Alloy Steel Pipe from Korea</u> was

supported by substantial evidence and was otherwise in accordance with law.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Robert G. Gosselink
Jarrod M. Goldfeder
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

*Counsel to Hyundai Steel Company*
Dated:  January 5, 2023        *Defendant-Intervenor*

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WHEATLAND TUBE, | |
|     Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Honorable Timothy M. Reif, Judge |
|     Defendant, | |
| and | Court No. 22-00160 |
| HYUNDAI STEEL COMPANY, SeAH STEEL CORPORATION, NEXTEEL CO., LTD., and HUSTEEL CO., LTD., | |
|     Defendant-Intervenors. | |

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Trade Pacific PLLC hereby certifies that the Response of Defendant-Intervenor, Hyundai Steel Company, in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, dated January 5, 2023, complies with the 7,000 word-count limitation described in the Court's July 29, 2022, Scheduling Order.  The response brief contains <u>3,315</u> words according to the word-count function of the word-processing software used to prepare the memorandum, excluding the table of contents, table of authorities, and undersigned counsel's signature block.

Respectfully submitted,

/s/ Jarrod M. Goldfeder
Robert G. Gosselink
Jarrod M. Goldfeder
TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, D.C.  20003
(202) 223-3760

*Counsel to Hyundai Steel Company*
*Defendant-Intervenor*

Dated:  January 5, 2023