## UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

WHEATLAND TUBE,

> *Plaintiff,*

v.

UNITED STATES,

> *Defendant,*

*and*

HYUNDAI STEEL,

SEAH STEEL CORPORATION,

NEXTEEL CO., LTD., *and*

HUSTEEL CO., LTD.,

> *Defendant-*
> *Intervenors*

**Court No. 22-00160**

## PLAINTIFF WHEATLAND TUBE'S REPLY BRIEF IN SUPPORT OF THE MOTION FOR JUDGEMENT ON THE AGENCY RECORD

Roger B. Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland Tube*

Dated: February 6, 2023

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................. ii

I.  Introduction ................................................................................ 1

Ii.  19 U.S.C. § 1677m(D) is inapplicable where commerce has not rejected
any information as deficient. .............................................................. 3

Iii.  Commerce Cannot use the inapplicable § 1677m(d) to escape the
requirements of § 1677b(a)(7)(a) in granting a CEP offset. ............................ 9

Iv.  Commerce was not bound by prior determinations to grant a CEP
offset in the instant review regardless of the inadequate record
actually before it. ........................................................................ 12

V.  Conclusion ................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 616 F. Supp. 2d 1354 (Ct. Int'l Trade 2009)............................................................ 11

*DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020)........................................................................................................ 13

*Deacero S.A.P.I. de C.V. v. United States*, 353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018)........................................................................................................ 4

*Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317 (Ct. Int'l Trade 2020) ............................................................................................................ 6, 7, 11

*Eregli Demir v. Celik Fabrikalari T.A.S*, 308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018)........................................................................................................ 8

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009) .................................................................................... 15

*Hyundai Steel Co. v. United States*, 365 F. Supp. 3d 1294 (Ct. Int'l Trade 2019)........................................................................................................ 11

*SeAH Steel VINA Corp. v. United States*, 950 F.3d 833 (Fed. Cir. 2020) .................. 6

*Shandong Huarong Mach. Co. v. United States*, 30 C.I.T. 1269 (2006) .................... 13

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................................ 6

19 U.S.C. § 1677b(a)(7) ............................................................................................. 9, 16

19 U.S.C. § 1677m(d) ............................................................ 3, 4, 5, 6, 7, 8, 9, 12, 16

**Regulations**

19 C.F.R. § 351.412.................................................................................................... 11

19 C.F.R. § 351.412(f) ............................................................................................... 11

**Administrative Decisions**

*Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 5792 (Dep't Commerce Feb. 2, 2022) ...................................... 12

*Certain Frozen Warmwater Shrimp From Thailand: Final Results of Antidumping Duty Administrative Review; 2019–2020*, 87 Fed. Reg. 69 (Dep't Commerce Jan. 3, 2022).............................................................. 14

*Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 53,631 (Dep't Commerce Sept. 28, 2021)........................................................... 15

*Common Alloy Aluminum Sheet From Bahrain: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 13,331 (Dep't Commerce Mar. 8, 2021) .................................................. 14

*Emulsion Styrene-Butadiene Rubber from Brazil: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 38,847 (Dep't Commerce June 29, 2020) .................................................. 14

*Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 76,918 (Dep't Commerce Dec. 23, 2004) .................................................. 12

*Polyethylene Terephthalate Sheet from the Republic of Korea,* 85 Fed. Reg. 44,276 (Dep't Commerce July 22, 2020) .................................................. 15

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe From Ukraine: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 35,272 (Dep't Commerce July 2, 2021) .................................................. 14

**Other Authorities**

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. R. Doc. No. 103–826(I), reprinted in 1994 U.S.C.C.A.N. 4040 .................................................. 10

Pursuant to USCIT Rule 56.2 and the Court's Scheduling Order (ECF No. 37), Plaintiff Wheatland Tube ("Wheatland" or "Plaintiff") submits the following reply brief supporting Plaintiff's motion for judgment on the agency record (*Plaintiff's Brief*, ECF No. 38).

## I.   Introduction

As set out in Plaintiff's Rule 56.2 brief (ECF No. 38), the Department of Commerce's ("Commerce") final determination in the 2019-2020 administrative review of the antidumping ("AD") order on circular welded non-alloy steel pipe ("CWP") from the Republic of Korea was arbitrary and capricious, unsupported by substantial evidence, and contrary to law. Commerce held specifically that the evidence on the record <u>was inadequate</u> to allow granting exporters Husteel Co., Ltd. ("Husteel") and Hyundai Steel Company ("Hyundai Steel") a constructed export prices ("CEP") offset based on their claimed differences in level of trade ("LOT") between home market and U.S. sales. *Issues and Decision Memorandum for the Final Results of the 2019-2020 Administrative Review of the Antidumping Duty Order on Circular Welded Non-Alloy Steel Pipe from the Republic of Korea*, No. A-580-809 (Dep't Commerce April 26, 2022) ("*Final IDM*"), P.R. 301.[1] Yet Commerce granted both respondents that offset, regardless of the admitted lack of adequate evidence on the record. Commerce argued that it had not provided the respondents sufficient additional opportunities to provide the evidence necessary so it had to

---

[1] Citations to documents on the public administrative record are denoted as "P.R." in this brief. No citations are made to the confidential record.

accept the inadequate evidence as sufficient. *See id.*, P.R. 301, at 13-24.

As detailed in Plaintiff's brief, however, the statute, Commerce's regulations, determinations by the Courts, and Commerce's own practice are all in agreement that the burden is on the respondent seeking the CEP offset to place substantial evidence on the record supporting its claims, not on the agency to seek it out. *See Plaintiff's Brief*, ECF No. 38, at 7-13. In repeated instances since 2018, Commerce has held that where a party has not provided that information, it has failed to meet that burden and so cannot be granted a CEP offset. *See id.* at 11-13.

In its response brief, Defendant does not disagree with Plaintiff's argument that the law is clear that the grant of a CEP offset is not automatic and that the burden to provide sufficient evidence to support a claim for that offset is on the party seeking it. *See Defendant Response Brief*, ECF No. 39, at 11-12. But, Defendant argues, Commerce did not grant the offset automatically here even though Commerce had found that burden had not been met. *Id.* Yet that is exactly what the agency did: it granted the offset to Husteel and Hyundai Steel not because it was supported by the record but because Commerce decided it could not *not* grant the offset for another reason. Thus, Commerce defaulted to an automatic application of granting the offset whether or not the evidence supported it. As that automatic grant is incompatible with the statute, precedent, and Commerce's own practice, Commerce's decision to do so was arbitrary and capricious and contrary to law.

**II.     19 U.S.C. § 1677m(d) is inapplicable where Commerce has not rejected any information as deficient.**

Defendant and certain Defendant-Intervenors[2] argue that Commerce's grant of the offsets was required by 19 U.S.C. § 1677m(d) and that this statutory provision overrules other authorities that place the evidentiary burden affirmatively on the respondent parties. *See Defendant Response Brief*, ECF No. 39, at 11; *Husteel Rebuttal Brief*, ECF No. 40 at 2-3; *Hyundai Steel Response Brief*, ECF No. 41, at 3-4.

However, these parties ignore the complete language of § 1677m(d), omitting the plain language that makes that section inapplicable here. Hyundai Steel, for example, quotes § 1677m(d) in its response brief, but cuts off from its quotation (with no indication it is doing so) the final part of the section. *Hyundai Steel Response Brief*, ECF No. 41, at 3.

The complete text of § 1677m(d) is

(d)     Deficient submissions

If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this

---

[2] Defendant-Intervenors NEXTEEL Co., Ltd. and SeAH Steel Corporation have submitted short briefs only claiming to incorporate by refence the arguments made by Defendant and other Defendant-Intervenors. *See* ECF Nos. 42 and 43.

subtitle. If that person submits further information
in response to such deficiency and either—

(1)   the administering authority or the
      Commission (as the case may be) finds that
      such response is not satisfactory, or

(2)   such response is not submitted within the
      applicable time limits,

then the administering authority or the
Commission (as the case may be) may, subject to
subsection (e), <u>disregard all or part of the original
and subsequent responses</u>.

19 U.S.C. § 1677m(d) (emphasis added).

The final phrase of § 1677m(d) (the part that is overlooked in Defendant's
and Defendant-Intervenors' arguments) explains when the limitations on the
agency's action that are provided for are triggered: when Commerce seeks to
*disregard* something submitted by a respondent because it does not comply with
Commerce's request. Commerce cannot reject what is submitted for being deficient
until it has given the submitter an opportunity to correct whatever was deficient
about that submission. *See, e.g.*, *Deacero S.A.P.I. de C.V. v. United States*, 353 F.
Supp. 3d 1303, 1310 fn.9 (Ct. Int'l Trade 2018) ("Pursuant to 19 U.S.C. § 1677m(d),
Commerce can disregard information submitted by a party….").

But Commerce did not disregard any information submitted by respondents
in the challenged decision here. It did not substitute adverse facts available, or even
neutral facts available, in place of anything submitted by Husteel or Hyundai Steel.
Commerce instead *did* examine the evidence submitted by those respondents and
found it to be insufficient, not deficient. *See Final IDM*, P.R. 301, at 13. But

Commerce then argued that because it had not sought more information from the respondents it would ignore its finding that the evidence on the record was factually insufficient and would declare that it was "sufficient for purposes of this segment" for that reason. *Id.* at 14.

But § 1677m(d) provides Commerce no authority to transform insufficient evidence into somehow factually sufficient evidence by fiat. Here, Commerce first stated specifically that the evidence offered by the respondents was inadequate. *Id.* at 13. The term "inadequate" is an antonym of "sufficient." *See* Merriam-Webster Thesaurus: sufficient. It is impossible for evidence to be both "inadequate" and "sufficient." Section 1677m(d) does not provide any basis for Commerce to make such an internally contradictory finding that evidence is both inadequate and sufficient.

By its plain terms, that section of the statute only applies to how Commerce can reject information on the record for being deficient in some regard and where Commerce seeks to substitute other information (including adverse inferences) for what was deficient and disregarded. That is not what occurred here. And nothing in § 1677m(d) allows, much less directs, Commerce to ignore its obligation to make a determination that is supported by substantial evidence on the record, particularly when the agency has recognized that the evidence before it is inadequate. If Commerce is not rejecting the information as deficient (which it did not here), then § 1677m(d) remains irrelevant and gives no instruction how Commerce should treat inadequate or insufficient evidence. The requirement that Commerce make a

determination supported by substantial evidence remains unchanged. *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *see also, e.g., SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 847 (Fed. Cir. 2020) ("While the burden of creating an adequate record lies with {interested parties},'Commerce must, nonetheless, support its decision with substantial evidence, {g}uesswork is no substitute for substantial evidence in justifying decisions;" citations and quotation marks omitted).

The Court of International Trade ("CIT") has directly rejected the argument that §1677m(d) prevents Commerce from finding that information on the record is insufficient to support a CEP offset without providing respondent parties a chance to revise the record as though Commerce was rejecting the evidence they choose to submit. The CIT found it to be irrelevant that "Commerce never requested any additional information or clarifications… in any supplemental questionnaire or otherwise indicated that any deficiency existed in the record regarding this issue" because "{t}he burden falls to the party seeking the CEP offset to provide the requisite evidence that would allow Commerce to determine that a CEP offset adjustment is warranted." *Dong-A Steel Co. v. United States*, 475 F. Supp. 3d 1317, 1347, fn. 22 (Ct. Int'l Trade 2020) (quotation marks omitted). The Court specifically rejected the relevance of § 1677m(d) to this situation in that case, explaining that "Commerce had no obligation under 19 U.S.C. § 1677m(d)" because Commerce was not rejecting any information for being deficient. "Rather, the fundamental difference in conclusions reached by {the respondent} and Commerce derived not from any shortcomings in the data, but rather from differing yet equally reasonable

6

interpretations of the evidence." "That Commerce did not request any additional information beyond what was provided {the respondent} does not discredit the validity of the conclusion drawn from that evidence." *Id.*

Defendant seeks to discount the Court's explanation in *Dong-A*, arguing that case was distinguishable because Commerce had not accepted that respondent's CEP offset claims in prior instances and because, Defendant argues, the issue here "is whether the information provided was sufficient." *Defendant Response Brief*, ECF No. 39, at 13-14. Those claims are without merit. Such considerations are nowhere found in the Court's holding in *Dong-A*, so the claim that the holding is so limited is not supported by the decision itself. Instead, the plain language of that decision is clear that § 1677m(d) did not apply because Commerce was not finding a response deficient, only insufficient. Here, Commerce likewise did not find the respondents' submissions deficient, only insufficient.

Defendant-Intervenor Husteel argues that this Court's decision in *Eregli Demir* establish that application of § 1677m(d) is "mandatory" in this situation, "regardless of the burden of proof." *See Husteel Response Brief*, ECF No. 40, at 2-3. Husteel's argument misses the saliant fact in *Eregli Demir*: in that case, Commerce *did* reject certain documents and quantity and value information the respondent presented as evidence supporting its claim[3] as deficient, "point{ing} to partial

---

[3] Husteel also states that *Eregli Demir* "examined this very issue." *Husteel Response Brief*, ECF No. 40, at 3. It is not clear from Husteel's language if it means the "very issue" of the CEP offset or the issue of § 1677m(d) more generally; but *Eregli Demir* did not address CEP offsets. That case instead addressed the burden on a

translations and the illegibility of certain documents on the record." *Eregli Demir v. Celik Fabrikalari T.A.S*, 308 F. Supp. 3d 1297, 1317-19 (Ct. Int'l Trade 2018). The question was whether Commerce needed to issue a supplemental questionnaire to the respondent on that issue, and the Court found "Commerce did not address the requirements of § 1677m(d)" before rejecting the documents from its consideration of the evidence on the issue before it. *Id.*, 308 F. Supp. 3d 1317-18. Because Commerce did reject that evidence as deficient, the Court found § 1677m(d) did impose obligations on the agency. *See id.*, 308 F. Supp. 3d 1318 ("Commerce erred in failing to inform {the respondent} that its supplemental submission was deficient …"). Here, Commerce did not reject any documents submitted by either respondent — neither from the record nor from its consideration — for a lack of translation nor for any other issue of deficiency. Instead, Commerce addressed all the evidence that was before it and found it insufficient to meet the burden that respondents bear in demonstrating entitlement to a CEP offset. Section 1677m(d) has no instructions for the agency in that situation.

Tellingly, nowhere does Defendant point to any deficiency that was identified by Commerce in either Husteel's or Hyundai Steel's submissions. Defendant properly states that Commerce instead found their "responses were insufficient." *Defendant Response Brief* at 11.[4] Commerce identified no deficiency in any of the

---

respondent seeking a duty drawback adjustment. *See Eregli Demir*, 308 F. Supp. 3d at 1304, 1318.

[4] In its response brief, Defendant-Intervenor Hyundai Steel argues that it had in fact provided sufficient evidence to support its claim for a CEP offset. *See Hyundai Steel Response Brief*, ECF No. 41, at 5-6, 8-10. But that is not what the agency

evidence before it that caused it to dismiss that evidence as unusable. *See Final IDM*, P.R. 301, at 14. Commerce stated only that Husteel and Hyundai Steel did not have "an opportunity…to remedy any deficiency in their quantitative analyses by providing additional information in a supplemental questionnaire response." *Id*. But Commerce never identified any deficiency in that analysis, it simply described the respondents' submissions as insufficient to meet the burden of proof those respondents bore. *See id*. at 13-14. But sufficiency gets no consideration under § 1677m(d), so Commerce cannot use that section of the statute to escape the burden on it to address the evidence that actually is (or is absent from) on the record.

**III.     Commerce cannot use the inapplicable § 1677m(d) to escape the requirements of § 1677b(a)(7)(A) in granting a CEP offset.**

As noted above and as detailed in Plaintiff's opening brief, the statute requires that Commerce affirmatively find that evidence on the record is adequate before Commerce is authorized to make a CEP offset (or any other LOT adjustment). *Plaintiff's Brief*, ECF No. 38, at 7-13. 19 U.S.C. § 1677b(a)(7)(A) requires that difference in LOTs be "<u>shown</u> to be wholly or partly due to a difference in level of trade" and that difference be "<u>demonstrated</u> to affect price comparability," (emphasis added). That language, limiting the granting of these adjustments to only

---

tasked with making the determination of the sufficiency of the evidence found: Commerce expressly found Hyundai Steel's evidence to be inadequate. *Final IDM*, P.R. 301, at 13. Hyundai Steel has not challenged that determination before this Court, so Hyundai Steel's arguments that Commerce's inadequacy determination was incorrect are entirely irrelevant.

those instances where they are fully supported by evidence on the record, is entirely purposeful. Congress explained that it intended that

> Commerce will carefully investigate whether a level of trade adjustment should be made to increase or decrease normal value. <u>However, if a respondent claims an adjustment to decrease normal value, as with all adjustments which benefit a responding firm, the respondent must demonstrate the appropriateness of such adjustment</u>.

> <u>Commerce will require evidence from the foreign producers</u> that the functions performed by the sellers at the same level of trade in the U.S. and foreign markets are similar, and that different selling activities are actually performed at the allegedly different levels of trade…. Because level of trade adjustments may be susceptible to manipulation, Commerce will closely scrutinize claims for such adjustments….

> <u>Where it is established</u> that there are different levels of trade based on the performance of different selling activities, but the data establish that there is a pattern of no price differences, the level of trade adjustment will be zero. No further adjustment is necessary.

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H. R. Doc. No. 103–826(I), at 829-830, reprinted in 1994 U.S.C.C.A.N. 4040, 4167-68, ("*SAA*") (emphasis added). To repeat Congress' explicit intent: "if a respondent claims an adjustment to decrease normal value…the respondent must demonstrate the appropriateness of such adjustment."

This language is mandatory, not permissive. Commerce is not allowed to make an LOT adjustment where the respondent has not supported its claim, even if Commerce believes it could have asked for more information from that respondent.

The respondent must make that demonstration before Commerce may act.[5]

Commerce's regulations reflect that statutory requirement. *See* 19 C.F.R. § 351.412. The regulations state that if Commerce cannot determine whether the requisite differences in LOTs exist and affect price comparability, Commerce "will not grant either a level of trade adjustment or a constructed export price offset." 19 C.F.R. § 351.412(f). This Court has also recognized that "it is the responsibility of the respondent requesting the CEP offset to procure and present the relevant evidence to Commerce." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 556, 616 F. Supp. 2d 1354, 1374 (Ct. Int'l Trade 2009); *see also Dong-A Steel*, 475 F. Supp. 3d at 1345; *Hyundai Steel Co. v. United States*, 365 F. Supp. 3d 1294, 1300 (Ct. Int'l Trade 2019); *Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1316 (Fed. Cir. 2001) ("the CEP offset will not be automatic;" "such adjustments will not be routine under Commerce's interpretation of the {statute}….").

Commerce itself has articulated this same position in other determinations

---

[5] In its response brief before this Court, Defendant-Intervenor Hyundai Steel seeks to pin blame for its failure to adequately create the record before the agency on Plaintiff, claiming that Plaintiff should have raised any issues with the insufficiency of the evidence Hyundai Steel submitted early in the review before Commerce. *Hyundai Steel Response Brief*, ECF No. 41, at 3-4. This argument is entirely facetious. Hyundai Steel cites to no authority to support its proposition that a domestic interested party in a review bears the burden of ensuring that a respondent party has submitted sufficient evidence to support a price adjustment sought by the respondent. As discussed above, all authorities instead agree that burden is entirely on the respondent. Hyundai Steel cannot excuse its failure to have met its burden here because Plaintiff did not hold Hyundai Steel's hand and guide it through the review. Hyundai's reliance on instances where Commerce found it did not have sufficient time to address certain issues at the briefing stage (*see id.* at 5) are clearly inapposite here, where Commerce did address this issue in its final determination.

where a respondent has failed to meet its evidentiary burden to qualify for a CEP offset. *See, e.g.*, *Notice of Final Determination of Sales at Less Than Fair Value and Negative Final Determination of Critical Circumstances: Certain Frozen and Canned Warmwater Shrimp From Thailand*, 69 Fed. Reg. 76,918 (Dep't Commerce Dec. 23, 2004), accompanying Issues and Decision Memorandum at Comment 5; *Carbon and Alloy Steel Wire Rod From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2019-2020*, 87 Fed. Reg. 5792 (Dep't Commerce Feb. 2, 2022), accompanying Issues and Decision Memorandum at 16.

In sum, Commerce's decision here to overlook Husteel's and Hyundai Steel's failure to meet the burden placed upon them by the statute was not only arbitrary and capricious, it was contrary to both law and to Commerce's practice. Commerce cannot excuse its open failure to follow the dictates of the statute by relying on § 1677m(d) when the provisions of that section are not applicable to the matter before Commerce by their own terms. Thus, the Court must find that Commerce's determination to grant an CEP offset to Husteel and Hyundai Steel in this review was unsupported by substantial evidence and contrary to the law.

## IV.   Commerce was not bound by prior determinations to grant a CEP offset in the instant review regardless of the inadequate record actually before it.

Faced with an acknowledged insufficiency of evidence in the record before it and the inevitable demands of the statute and its own regulations and practice, Commerce rationalized its decision to grant the offsets anyway by stating only that it had not provided additional opportunities for the respondents to meet their burden. *Final IDM*, P.R. 301, at 13-14. In its response brief, Defendant argues that

somehow the evidence Husteel and Hyundai Steel chose to offer was found to be deficient because Commerce had previously granted CEP offsets based on similar evidence in other proceedings. *See Defendant Response Brief*, ECF No. 39, at 11.

That claim is purely *post hoc* rationalization. *See, e.g., DAK Americas LLC v. United States*, 456 F. Supp. 3d 1340, 1364 (Ct. Int'l Trade 2020) ("this is a post hoc rationalization that the court may not consider."). Commerce did not support its decision below based on any prior determination, and did not even cite to any prior determination on CEP offsets in its Issues and Decision Memorandum. *See Final IDM*, P.R. 301, at 13-14. Whether similar information was previously accepted in other proceedings was not considered in the decision the agency presented here.

And even it if had examined whether it had accepted such evidence as sufficient in the past, that fact would in no way excuse Commerce's decision to do so here. A failure to abide by the constraints of the statute and its own regulations in a prior instance does not excuse the failure to do so here; Commerce cannot overrule statute with an alleged practice.

Defendant argues however that Commerce is bound by "principles of fairness" to a prior practice. *Defendant Response Brief*, ECF No. 39, at 14. Defendant cites to two of Commerce's prior reviews of this order. *Id.* at 9 (the 2017-2018 and 2018-2019 review). But as this Court has said, "…two prior determinations are not enough to constitute an agency practice that is binding on Commerce." *Shandong Huarong Mach. Co. v. United States*, 30 C.I.T. 1269, 1293 (2006); *see also Mid Continent Steel & Wire, Inc. v. United States*, 203 F. Supp. 3d

13

1295, 1312 (Ct. Int'l Trade 2017) (stating the same). In contrast, Commerce has

stated in numerous recent determinations that its current practice is otherwise:

> Since 2018, Commerce has required respondents to
> provide quantitative evidence in support of their LOT
> claims. In other recent final determinations, Commerce
> has declined to find the existence of different LOTs when
> the record lacked sufficient quantitative evidence
> corroborating a respondent's LOT claims.

*Certain Frozen Warmwater Shrimp From Thailand: Final Results of Antidumping*

*Duty Administrative Review; 2019–2020*, 87 Fed. Reg. 69 (Dep't Commerce Jan. 3,

2022), accompanying Issues and Decision Memorandum at 17; *see also, e.g.,*

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe From Ukraine:*

*Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg.

35,272 (Dep't Commerce July 2, 2021), accompanying Issues and Decision

Memorandum at 13-14; *Common Alloy Aluminum Sheet From Bahrain: Final*

*Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 13,331

(Dep't Commerce Mar. 8, 2021), accompanying Issues and Decision Memorandum at

20-21; *Emulsion Styrene-Butadiene Rubber from Brazil: Final Results of*

*Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 38,847 (Dep't

Commerce June 29, 2020), accompanying Issues and Decision Memorandum at 11.

   Defendant's position that Commerce's acceptance of evidence as sufficient in

the past remains binding on Commerce despite Commerce's widespread recognition

that its practice has changed is particularly untenable here. An agency may of

course change its practice for good reason and if it "adequately indicates" it is

making a change. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517, 129 S.Ct.

14

1800, 1811, 173 L.Ed.2d 738 (2009). As discussed above, there is good reason behind Commerce's change in practice regarding the evidence, particularly qualitative evidence, that is necessary to support the granting of CEP offsets: Commerce is instructed to do so by the statute. Commerce has also further explained that such a step is necessary to prevent manipulation of the LOT adjustment process. *See, e.g., Polyethylene Terephthalate Sheet from the Republic of Korea,* 85 Fed. Reg. 44,276 (Dep't Commerce July 22, 2020) and accompanying Issues and Decision Memorandum at 20. Commerce has announced that new procedure widely in other determinations, as cited above. In addition, in the latest determinations relied upon by Defendant, Commerce <u>explicitly</u> informed respondents that it was "taking advantage of this opportunity to inform Husteel that in future administrative reviews a more detailed and robust quantitative analysis of its selling functions will be required for us to consider a CEP offset." *Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 53,631 (Dep't Commerce Sept. 28, 2021), accompanying Issues and Decision Memorandum at 17 ("*CWP 18-19 IDM*").[6] And in this review, Commerce also explicitly directed Husteel and Hyundai Steel to provide substantial evidence to support any LOT claims they made, including specifically to provide a qualitative analysis showing the impact on price comparability. *See Initial Questionnaire to Husteel Co., Ltd.*

---

[6] Hyundai Steel was also a respondent in that preceding review, so would have also been equally aware of Commerce's warning. *See CWP 18-19 IDM* at 1.

(Dep't Commerce Feb. 23, 2021), P.R. 26, at pages A-7 – A-8; *Initial Questionnaire to Hyundai Steel Company* (Dep't Commerce Feb. 23, 2021), P.R. 25, at pages A-7 – A-8.

Though forewarned that prior evidence would no longer be accepted as sufficient and instructed what additional evidence would be necessary, Husteel and Hyundai Steel yet submitted only "comparable information" again. *Defendant Response Brief*, ECF No. 39, at 14. And, as it warned it would, Commerce found that evidence was not sufficient to meet the requirements of the statute or the needs of the agency. But then Commerce declared that the inadequate evidence as sufficient for other reasons and granted the offsets anyway, exactly what it warned it would not do. Such actions are arbitrary and capricious.

## V.   Conclusion

In short, the answer to Defendant's challenge that Plaintiff fails to explain why Commerce "would not have run afoul of section 1677m(d)" if it had denied the CEP offsets here (*Defendant Response Brief*, ECF No. 39, at 15) is simply that § 1677m(d) would not be triggered because Commerce's acting on the inadequacy of the evidence before it would be based on examining that evidence, not rejecting that evidence. Because Commerce found that evidence to be insufficient to support granting a CEP offset, Commerce's decision to grant the offsets anyway runs afoul of 19 U.S.C. § 1677b(a)(7) and Congress' express instruction that no CEP offset be granted based on such insufficient evidence.

Plaintiff therefore respectfully requests that this Court hold that Commerce's decision to grant CEP offsets to Husteel and Hyundai Steel in the review at hand

was arbitrary and capricious, not supported by substantial evidence, and otherwise

not in accordance with the law and remand this action to Commerce with

instructions to recalculate the dumping margins assigned to Husteel, Hyundai

Steel, and the other respondents in the challenged review as necessary, consistent

with the Court's decision.

Respectfully submitted,

/s/  Nicholas J. Birch_____
Roger Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland Tube*

Dated: February 6, 2023

17

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Schagrin Associates hereby certifies that the Reply Brief of Plaintiff Wheatland Tube, dated February 6, 2023, complies with the word-count limitation set out in this Court's Scheduling Order of July 29, 2022 (ECF No. 37), limiting Plaintiff's Reply brief to 7,000 words. This response brief contains 5,156 words according to the word count function of the word processing software used to prepare the brief.

Respectfully submitted,

/s/  Nicholas J. Birch
Roger Schagrin
Elizabeth J. Drake
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Plaintiff Wheatland Tube*

Dated: February 6, 2023